UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

In re                                        :    Chapter 13

DAVID G. SZYMANSKI                           :

                        Debtor               :    Bankruptcy No. 09-10880bf
_____

DAVID G. SZYMANSKI and WILLIAM               :
C. MILLER, Chapter 13 trustee
                        Plaintiffs           :

        v.                                   :

WACHOVIA BANK, N.A. and                      :
FLETCHER HARLEE CORPORATION
                        Defendants           :    Adversary No. 09-0068
_____

................................................

MEMORANDUM

................................................

        Two related matters are presently before me as four parties seek recovery or

control of more than $200,000 deposited in bank accounts titled in the debtor's name.

        The chapter 13 debtor, David G. Szymanski, and the standing chapter 13

trustee, William C. Miller, Esq., filed an adversary proceeding against Wachovia Bank,

N.A. and Fletcher Harlee Corporation.  The complaint, inter alia, demands turnover under

11 U.S.C. § 542 of the funds in those bank accounts held by defendant Wachovia.  The

complaint also seeks to avoid a prepetition garnishment of those accounts by defendant

Fletcher Harlee as preferential under 11 U.S.C. §§ 522 and 547, as well as recovery

against that defendant under section 550.[1]  To the extent the Fletcher Harlee garnishment

lien is avoided, the trustee and debtor expect to preserve that lien under sections 522 and

551.

Fletcher Harlee answered this complaint asserting that it held a valid lien on

the debtor's property held by Wachovia, which lien was not preferential.  It also

challenged the debtor/plaintiff's standing to seek turnover.  Wachovia also opposes

turnover, contending that it holds a valid right of setoff of those deposit accounts under

Pennsylvania law, and filed a cross-claim against Fletcher Harlee alleging that its right of

setoff primes any lien held by that defendant.  Fletcher Harlee disputes that contention.

Finally, in a separate motion, Wachovia seeks to terminate the bankruptcy

stay under section 362(d) so that it may exercise its setoff rights.  Both plaintiffs, as well

as Fletcher Harlee, oppose such relief.

Trial was scheduled upon the adversary proceeding and the lift-stay motion.

Owing to some last minute maneuvers by the parties, the claim and cross-claim against

Fletcher Harlee were severed and will be tried at a later date.  Furthermore, the parties

agreed that the plaintiff's turnover claim against Wachovia and Wachovia's lift-stay

motion would be heard on a consolidated evidentiary record.

At trial, the parties offered no witnesses; only a stipulation of facts and

copies of certain documents were introduced into evidence.

---

[1]The plaintiffs also contend that a lien on the debtor's residence is preferential.
That issue is not now before me.

2

I.


A.


The parties stipulated to the following facts as relevant to these disputes:

S&C Properties, Ltd. is indebted to Wachovia Bank, N.A. under a promissory note dated March 5, 2002, in the original principal amount of $700,000.  Ex. J-1, at ¶ 1 (ex. A is a copy of the promissory note).  Del Concrete Company is indebted to Wachovia under a "demand" note dated March 17, 2004, in the original principal amount of $125,000.  Id., at ¶ 2 (ex. B is a copy of that promissory note).  Mr. Szymanski guaranteed the loan obligations of both S&C Properties and Del Concrete pursuant to two Unconditional Guaranty Agreements dated March 5, 2002 and March 17, 2004, respectively.  Id., at ¶ 3 (exs. C and D are copies of those guarantee agreements).

Payment of both promissory notes was secured by real property owned by S&C Properties, which realty is located at 845 Kiamensi Road, Wilmington, Delaware, with Wachovia holding a first mortgage position.  Ex. J-1, at ¶ 4.  This real property had been appraised in an amount in excess of $1,000,000.  Id., at ¶ 5 (ex. E is a copy of an undated "property evaluation" prepared by Coldwell Banker Commercial).[2]

The debtor "is the owner" of various general deposit accounts at Wachovia, denominated accounts numbered 1010071495510, 1010119886599, and 1010158887737.  Id., at ¶ 6.  These deposit accounts were subject to and governed by an agreement entitled

_____

[2]Since this document refers to a comparable sale of realty in February 2007, it must have been prepared after that date.

3

"Deposit Agreement and Disclosures for Personal Accounts" dated October 1, 2008. Id., at ¶ 7 (ex. F is a copy of the Deposit Agreement).

As of November 10, 2008, the three deposit accounts had a total balance of $218,316.02. Id., at ¶ 8. As of January 14, 2009, the three deposit accounts had a total balance of $222,847.64. Id., at ¶ 9. And as of February 9, 2009, the three deposit accounts had a total balance of approximately $222,000. Id., at ¶ 10.

On October 15, 2007, the Superior Court of Pennsylvania decided an appeal in the civil action styled Fletcher Harlee v. David Szymanski and David Concrete Corporation, Inc., docketed at No. 3424 EDA 2006. Id., at ¶ 11 (ex. G is a copy of that appellate decision). The Superior Court vacated the judgment entered by the trial court and directed that judgment be entered in favor of Fletcher Harlee against the debtor. Based upon that directive, on December 24, 2008, judgment was entered in favor of Fletcher Harlee against David Szymanski in the amount of $330,195.04, plus interest at the rate of 6% per annum from October 1, 2001. Id., at ¶ 12 (ex. H is a copy of the state trial court judgment order).

On January 14, 2009, Fletcher Harlee served a writ of execution on Wachovia to garnish Mr. Szymanski's deposit accounts. Id., at ¶ 13. At the same time, it served interrogatories on Wachovia dated January 9, 2009. Id., at ¶ 13 (ex. I is a copy of those interrogatories). Wachovia answered the interrogatories on or about January 26, 2009. Id., at ¶ 14 (ex. J is a copy of Wachovia's answers). These answers were verified

by John O'Donnell, "the Writ of Execution Administrator of Wachovia National Bank." Id., at ¶ 14.[3]

As of January 14, 2009, $415,675.44 remained due and owing to Wachovia under the S&C Properties note, and $35,148.88 remained due and owing to Wachovia under the Del Concrete note.  Id., at ¶¶ 15, 16.

On February 5, 2009, S&C Properties failed to make a periodic payment of principal and interest required under the S&C Properties note.  Id., at ¶ 17.

Mr. Szymanski filed a voluntary petition in bankruptcy under chapter 13 on February 9, 2009.  Id., at ¶ 18.  As of February 9, 2009, Wachovia had not provided any written or verbal notice of loan default to Mr. Szymanski, S&C Properties nor Del Concrete in connection with either promissory note or the loan guaranty agreements.  Id., at ¶¶ 19, 20.  As of February 9, 2009, Wachovia had not made a demand for payment under the Del Concrete note.  Id., at ¶ 21.

As of June 9, 2009, a total of $448,461.37 remained due and owing to Wachovia under the S&C Properties and Del Concrete loan notes.  Id., at ¶ 22.

Mr. Szymanski intends to partially fund his chapter 13 plan through the use of the funds in the deposit accounts.  Id., at ¶ 23.

Fletcher Harlee admits that it is the initial transferee of the garnishment within the meaning of 11 U.S.C. § 550(a).  Id., at ¶ 25.

---

[3]On January 14, 2009, Wachovia mailed a copy of the execution document to the debtor and also informed him that four deposit accounts were being frozen.  Ex. J-3.  The parties offer no information regarding this fourth account: No. 101014166923.

B.

One or more of the parties to these disputes focus upon some of the provisions found in the documents attached to their stipulation of facts. Those provisions relevant to these disputes are as follows:

The S&C Properties promissory note, dated March 5, 2002 (Exhibit A), bears the logo of Wachovia's predecessor bank and appears to be prepared from a bank form. It called for monthly payments beginning April 2002 and was to mature in March 2017. Nonpayment, or the bankruptcy filing or "material business alteration" of the borrower or its affiliates or subsidiaries constituted an event of default. The bankruptcy filing of "any party to the Loan Documents" also represented a default.[4] The promissory note also provided that a default occurred:

> At Bank's option, any default in payment or performance of
> any obligation under any other loans, contracts, or agreements
> of Borrower, any Subsidiary or Affiliate of Borrower, any
> general partner of or the holder(s) of the majority ownership
> interests of Borrower with Bank or its affiliates ("Affiliate"
> shall have the meaning as defined in 11 U.S.C. § 101, except
> that the term "Borrower" shall be substituted for the term
> "Debtor" therein; "Subsidiary" shall mean any business in
> which Borrower holds, directly or indirectly, a controlling
> interest).

Ex. A., at 3.[5]

---

[4]Loan documents were defined to include guarantee agreements. Ex. A, at 2.

[5]Section 101(2) of the Bankruptcy Code defines "affiliate" as follows:

(A) entity that directly or indirectly owns, controls, or holds with
power to vote, 20 percent or more of the outstanding voting
securities of the debtor, other than an entity that holds such

(continued...)

Upon an event of default of the S&C Properties note, Wachovia was permitted to "[f]oreclose its security interest or lien against the Borrower's accounts without notice," and "to accelerate the maturity" of the promissory note. Ex. A, at 3. Delaware law governed interpretation of this promissory note. Ex. A, at 4.[6]

---

[5](...continued)
securities–

  (i) in a fiduciary or agency capacity without sole discretionary power to vote such securities; or

  (ii) solely to secure a debt, if such entity has not in fact exercised such power to vote;

(B) corporation 20 percent or more of whose outstanding voting securities are directly or indirectly owned, controlled, or held with power to vote, by the debtor, or by an entity that directly or indirectly owns, controls, or holds with power to vote, 20 percent or more of the outstanding voting securities of the debtor, other than an entity that holds such securities–

  (i) in a fiduciary or agency capacity without sole discretionary power to vote such securities; or

  (ii) solely to secure a debt, if such entity has not in fact exercised such power to vote;

(C) person whose business is operated under a lease or operating agreement by a debtor, or person substantially all of whose property is operated under an operating agreement with the debtor; or

(D) entity that operates the business or substantially all of the property of the debtor under a lease or operating agreement.

[6]The note provided that the loan documents were to be "governed and construed under the laws of the state named in the Bank's address shown above. . . ." Ex. A, at 4. That address was in Wilmington, Delaware.

The Del Concrete promissory note, dated March 17, 2004 (Exhibit B) appears to be a later version of the promissory note form used in 2002. It called for monthly payments beginning in April 2004, ex. B, at 2, but also stated:

> This is a demand Note and all Obligations hereunder shall become immediately due and payable upon demand.

Id., at 3. It also was to be governed by Delaware law. Id., at 4.[7]

The debtor signed an "Unconditional Guaranty" (Exhibit C) denoting S&C Properties, Ltd. as the borrower. This document, with a bank logo on the top, appears to be adapted from a form document. This document states that it is an "unconditional guarantee of payment and performance and not of collection." Ex. C, at 1. It also contains a "waiver" of "(f) . . . notice of default, demand for payment, . . . [and] notice of acceleration of maturity. . . ."

Under this guarantee agreement, a default arises, inter alia, from non-payment of the S&C Properties note, or bankruptcy or insolvency proceedings brought by or against the debtor. Ex. C, at 3. A default is also defined as "a breach of any agreement or representation contained or referred to in the Guaranty, or any of the Loan Documents, or contained in any other contract or agreement of Guarantor with Bank or its affiliates, whether now existing or hereafter arising[.]" Id., at 3. Upon default of the guarantee, the S&C Properties loan is immediately due and payable. Id., at 3. This guarantee is also governed by Delaware law.

The Del Concrete guarantee executed by Mr. Szymanski in March 2004 (Exhibit D) is a later version of the guarantee document used in 2002. It was also an

_____

[7]See note 6 infra.

unconditional guarantee of "payment and performance and not of collection." Ex. D, at 1. The document contained a waiver of any notices of default or acceleration, and declared that non-payment or bankruptcy or insolvency proceedings involving the debtor constituted a default. Id., at 2-3. The guarantee also contained a "financial condition" provision, by which the guarantor warranted, inter alia, his solvency, the accuracy of his financial statements, and that "since the date of such financial statements, there has not occurred a material adverse change in the financial condition of the Guarantor[.]" Id., at 3.

Unlike the S&C Properties guarantee, the Del Concrete guarantee also declared that a default would occur if:

> (d) Bank determines in good faith, in its sole discretion, that the prospects for payment or performance of the Guaranteed Obligations are impaired or a material adverse change has occurred in the business or prospects of Borrower or Guarantor, financial or otherwise.

Ex. D, at 3. In the event of default:

> . . . the Guaranteed Obligations shall be due immediately and payable without notice . . . and, Bank and its affiliates may exercise any rights and remedies as provided in this Guaranty and other Loan Documents, or as provided at law or equity.

Id., at 3. This guarantee also stated that Delaware law would govern its terms. Id., at 4.

The Deposit Agreement, effective October 1, 2008, contains this setoff provision:

> If you ever owe us or any of our affiliates money as a borrower, guarantor, judgment debtor or otherwise . . . and it becomes due, we have the right under the law (called "setoff") and under this Agreement, by which you grant us a security interest in your certificates of deposit and other deposit accounts, to use the money from your account(s) maintained with us or our affiliates to pay the debt.

Ex. F, at 15, ¶ 30.

Finally, exhibits I and J are the garnishment interrogatories posed by

Fletcher Harlee and Wachovia's answers thereto.  In response to the query regarding

Wachovia's possession or control of property of the debtor, the bank replied with

information about the debtor's deposit accounts and total balance.  Wachovia also added:

> Pursuant to the terms and conditions of the deposit agreement
> between the bank and depositor, the bank claims a priority
> lien in, and a right of set-off against the account consisting of
> $100 Legal Processing Charge, leaving a balance for
> execution purposes of $222,747.64.  In addition, pursuant to
> 42 Pa. C.S.A. Section 2503, garnishee attorneys fees are
> authorized in an amount to be determined and deducted from
> the attached funds.

Ex. J, ¶ 2.

Furthermore, in these garnishment interrogatories, Wachovia was asked

whether Mr. Szymanski had "pledged, assigned or transferred to [Wachovia] any

collateral or security interest, including but not limited to personal or corporate property,

guarantees, securities or property interests of any nature?"  The bank responded "no" to

the query.  Id., ¶ 6.


II.


The Supreme Court has explained the applicability of setoff rights in

bankruptcy cases:

> The right of setoff (also called "offset") allows entities that
> owe each other money to apply their mutual debts against
> each other, thereby avoiding "the absurdity of making A pay
> B when B owes A."  Studley v. Boylston Nat. Bank, 229 U.S.
> 523, 528 . . . (1913).  Although no federal right of setoff is

created by the Bankruptcy Code, 11 U.S.C. § 553(a) provides
that, with certain exceptions, whatever right of setoff
otherwise exists is preserved in bankruptcy.

Citizens Bank of Maryland v. Strumpf, 516 U.S. 16, 18 (1995).

Although a prepetition right of setoff is preserved under the Bankruptcy

Code by section 553(a), the exercise of that right is enjoined by the bankruptcy stay.  11

U.S.C. § 362(a)(7); see Citizens Bank of Maryland v. Strumpf, 516 U.S. at 19 ("It is also

undisputed that under § 362(a)[7] respondent's bankruptcy filing stayed any exercise of

that right [of setoff] by petitioner.").

Recognizing that post-bankruptcy setoffs are within the scope of the

bankruptcy stay, Wachovia now requests that the automatic stay be terminated pursuant to

11 U.S.C. § 362(d) so that it may exercise its non-bankruptcy law right to recover the

funds in the debtor's deposit accounts.  See generally U.S. on Behalf of I.R.S. v. Norton,

717 F.2d 767, 771 (3d Cir. 1983) ("Thus, before a setoff can be made against the debts

owed by a petitioner in bankruptcy, a creditor must seek relief from the automatic stay");

In re Ealy, 392 B.R. 408 (Bankr. E.D. Ark. 2008).

That lift-stay request is opposed by the debtor, the chapter 13 trustee and

Fletcher Harlee.  They contend, alternatively, that: (1) Wachovia holds no setoff right

because Fletcher Harlee's garnishment lien, which lien exceeds the funds in the debtor's

deposit accounts, arose first and extinguished the possibility of setoff; (2) any right of

setoff was waived by Wachovia prepetition, when it was not asserted as a defense to

Fletcher Harlee's garnishment action; and (3) Wachovia should look to its mortgage on

the S&C Properties realty for any recovery of prepetition claims.

11

Whether or not Wachovia is granted relief from the automatic stay, if the bank holds a right of setoff, it need not turn over estate property.  The turnover statute states: "an entity that owes a debt that is property of the estate . . . shall pay such debt . . . except to the extent that such debt may be offset under section 553 of this title against a claim against the debtor."  11 U.S.C. § 542(b).

Moreover, by virtue of section 506(a), a setoff right gives rise to an allowed secured claim.  See, e.g., In re Patterson, 967 F.2d 505, 509 (11th Cir. 1992); In re Rehab Project, Inc., 238 B.R. 363, 375 (Bankr. N.D. Ohio 1999) ("Congress bestowed upon creditors having a valid right of setoff, the status of an allowed secured claim, thus giving that creditor the highest priority under the Bankruptcy Code. § 506(a)."); In re Koch, 224 B.R. 572, 575 (Bankr. E.D. Va. 1998).[8]  Creditors treated as holding secured claims under section 506 may have no duty to turn over collateral unless their secured claim is adequately protected.  See 11 U.S.C. § 363(e); United States v. Whiting Pools, Inc., 462 U.S. 198 (1983).

_____

[8]Section 506(a) provides in relevant part:

An allowed claim of a creditor secured by a lien on property in which the estate has an interest, or that is subject to setoff under section 553 of this title, is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property, or to the extent of the amount subject to setoff, as the case may be, and is an unsecured claim to the extent that the value of such creditor's interest or the amount so subject to setoff is less than the amount of such allowed claim.

(emphasis added).

A.

In order to possess a right of setoff under section 553, there must be a mutuality of obligations between the debtor and the creditor asserting a right to setoff.  As stated by the Third Circuit Court of Appeals: "To be mutual, the debts must be in the same right and between the same parties, standing in the same capacity."  In re Bevill, Bresler & Schulman Asset Management Corp., 896 F.2d 54, 59 (3d Cir. 1990) (quoting 4 Collier on Bankruptcy, ¶ 553.04[3], at 553-22 (15th ed. 1979)); see, e.g., In re Davidovich, 901 F.2d 1533, 1537 (10th Cir. 1990).  Here, no party disputes that mutuality of any obligations owing between Mr. Szymanski and Wachovia exists.

It has been acknowledged in a non-bankruptcy context that "[s]etoff will not be permitted when it would be inequitable or contrary to public policy to do so." Federal Deposit Ins. Corp. v. Bank of America Nat. Trust and Sav. Ass'n, 701 F.2d 831, 836 (9th Cir.), cert. denied, 464 U.S. 935 (1983).  This concept has been incorporated implicitly into the setoff provisions of section 553, "whose language is permissive, not mandatory."  U.S. on Behalf of I.R.S. v. Norton, 717 F.2d at 772; see, e.g., In re Hal, Inc., 122 F.3d 851, 854 (9th Cir. 1997).  Nonetheless, setoffs under section 553 "are generally favored, . . . [although] not automatically permitted."  Melamed v. Lake County Nat. Bank, 727 F.2d 1399, 1404 (6th Cir. 1984).  As explained by one appellate court in the context of a receivership proceeding:

> The right to setoff exists where there are mutual debts
> between parties. . . .  The district court has discretion whether
> to allow a setoff against a receiver, and this decision will be
> overturned for an abuse of discretion. . . .  This discretion has,
> of course, limits and is governed by equity jurisprudence. . . .

13

> The district court must weigh the equities to determine
> whether to allow setoff. . . .
>
> Recognizing a strong federal policy towards allowing setoff,
> the Second Circuit is reluctant to disturb this policy unless
> compelling circumstances require it.  A decision disallowing a
> setoff must not be made cavalierly. . . .  Likewise, other courts
> have recognized that there is practically a presumption in
> favor of allowing setoff. . . .
>
> The burden is on the party moving to deny setoff to prove that
> setoff should be denied.

S.E.C. v. Elliott, 953 F.2d 1560, 1572 (11th Cir. 1992) (citations omitted), rev'd in part

on other gnds, 998 F.2d 922 (11th Cir. 1993).

Generally, courts have disallowed an otherwise valid right to setoff in

"compelling circumstances," In re Whimsy, Inc., 221 B.R. 69, 74 (S.D.N.Y. 1998), where

the creditor has committed inequitable, illegal or fraudulent acts, or the application of

setoff would violate public policy.  See, e.g., In re Cascade Roads, Inc., 34 F.3d 756, 766

(9th Cir. 1994) (United States acted inequitably).  Otherwise, "[c]ourts generally

recognize that, by establishing a right of setoff, the creditor has established a prima facie

showing of 'cause' for relief from the automatic stay under § 362(d)(1). . . .  Once the

creditor establishes its right of setoff, the burden then shifts to the debtor to rebut the

prima facie showing."  In re Ealy, 392 B.R. at 414.


B.


One issue debated by these parties involves the effect, if any, of Fletcher

Harlee's execution upon Wachovia's prepetition setoff rights.  When Fletcher Harlee

14

served a writ of attachment and interrogatories in aid of garnishment upon Wachovia, a

limited cause of action was commenced:

> Plaintiff's action, as related to the bank, was begun by the
> writ of attachment execution.  'As to the defendant in the
> judgment on which it issues, it is a species of execution
> process; but as to the garnishee, who becomes a party
> defendant therein, it is an original process,–a summons
> commanding him to appear and show cause, if any he has,
> why the judgment in favor of the plaintiff should not be levied
> of the goods and effects of the defendant in his hands.  In
> form as well as in effect the summons clause of an attachment
> execution, required to be served on the garnishee, is in every
> proper sense of the term a 'writ.' * * *'  Kennedy v.
> [Agricultural] Insurance Co., 165 Pa. 179, 183, 30 A. 724,
> 725.

Aarons v. Public Service Building & Loan Ass'n, 318 Pa. 113, 118 (Pa. 1935).

Thus, garnishment is an execution remedy that permits judgment creditors

to reach the assets of judgment defendants when those assets are in the possession of a

third party.  See, e.g., Brown v. Candelora, 708 A.2d 104, 107 (Pa. Super. 1998).

Garnishment proceedings determine only whether a garnishee "owes a debt to the

judgment debtor, or has property of the judgment debtor."  Garden State Standardbred

Sales Co., Inc. v. Seese, 417 Pa. Super. 15, 18 (1992).  A valid claim is made against a

garnishee only if the garnishee has possession, control or custody of property of the

debtor.  See Pa. R.C.P. 3101(b)(2).  A judgment creditor cannot attach property belonging

to a non-judgment defendant, nor does it obtain rights against property, or against the

garnishee, that are greater than those of the judgment defendant.  See Austin-Nichols &

Co. v. Union Trust of Pittsburgh, 289 Pa. 341, 346 (1927).

In Pennsylvania, the garnishment process commences when the judgment

creditor files a praecipe for writ of execution with the prothonotary of the county in which

the judgment has been entered.  Pa. R. Civ. P. 3103(a).  The county sheriff serves this

writ upon the garnishee.  Pa. R. Civ. P. 3111(a).  Service of the writ attaches all property

of the judgment defendant that is in the possession of the garnishee and that is otherwise

attachable under Pennsylvania law.  Pa. R. Civ. P. 3111(b).  Attachable property of the

judgment defendant that comes into possession of the garnishee after service of the writ is

also attached.  Id.

Proper service of the writ of execution upon the garnishee effects "an

equitable assignment" of the judgment defendant's property held by the garnishee for the

benefit of the judgment creditor.  Aarons v. Public Service Building & Loan Ass'n, 318

Pa. at 117; see also Royal Bank of Pennsylvania v. Selig, 434 Pa. Super. 537, 544 (1994).

The garnishee is enjoined from paying any debt to or for the account of the judgment

defendant and from delivering any attached property of the judgment defendant until such

time as the judgment against the judgment defendant is satisfied or the writ is

discontinued or terminated.  Pa. R. Civ. P. 3111(c).

Service of the writ of execution does not, by itself, recover for the judgment

plaintiff any property of the judgment defendant held by the garnishee.  In order to obtain

such property, the judgment plaintiff serves interrogatories upon the garnishee requesting

information about property of the judgment defendant in the possession of the garnishee.

Pa. R. Civ. P. 3144.  Service of these interrogatories is the equivalent of serving a

complaint, and the garnishee must then file a timely response or suffer default.  Pa. R.

Civ. P. 3145, 3146.  The garnishee is permitted to raise any defense or counterclaim that

it may have against the judgment defendant.  Pa. R. Civ. P. 3145(b)(2); see, e.g., Aarons

v. Public Service Building & Loan Ass'n, 318 Pa. at 117:

16

> [The garnishee] may make the same defense to the attachment
> by evidence of set-off or of other equities that he might have
> made if sued by his original creditor.

If the garnishee responds to interrogatories admitting to possessing property of the

judgment defendant that is attachable under state law then:

> [T]he court shall determine and enter judgment for the value
> of the property of the defendant in the hands of the garnishee
> but shall not enter judgment in excess of the judgment of the
> plaintiff against the defendant together with interest and costs.
> If the garnishee fails to appear, or if appearing offers no
> evidence, the amount of the judgment shall thereupon be
> entered in the amount of the plaintiff's judgment against the
> defendant together with interest and costs, and the court may
> also award to the plaintiff reasonable expenses including
> attorney's fees.

Pa. R. Civ. P. 3146(a)(1).

Whether or not Fletcher Harlee obtained a judgment against Wachovia on

its interrogatories, there is no dispute that service of the writ of execution upon Wachovia

created a lien in favor of this creditor upon the debtor's deposit accounts:

> Under Pennsylvania law, the lien of a judgment creditor
> attaches to a judgment debtor's personal property in the
> possession of a third party when a writ of execution is served
> upon that third party, (known as a garnishee).  Pa. R. Civ. P.
> 3111(b); Helms v. Chandler, 423 Pa. 77, 223 A.2d 30 (1966);
> Dietrich Industries, Inc. v. Abrams, 309 Pa. Super. 202, 455
> A.2d 119 (1982).  A garnishee can be any person in
> possession of the judgment debtor's property.  Pa. R. Civ. P.
> 3101(b).  Here, Decatur held a judgment against Irvan, and,
> on October 16, 1985, Decatur served a writ of execution on
> Summit Bank, which possessed funds of Irvan.  Under
> Pennsylvania law, Decatur's judgment lien attached to those
> funds at that time.

17

Decatur Contracting v. Belin, Belin & Naddeo, 898 F.2d 339, 342-43 (3d Cir. 1990).[9]

Therefore, unless some prior right interceded, when Fletcher Harlee served its writ of

execution upon Wachovia on January 14, 2009, it established a security interest in all of

the debtor's deposit accounts with that bank.


C.


Although the promissory notes and guarantees all stated that the rights of

the parties under those documents would be governed by the law of the State of

Delaware, Wachovia and the other parties refer to Pennsylvania law in addressing the

bank's right of setoff in the instant disputes.  Presumably, this is owing to the location of

the deposit accounts in Pennsylvania.  I shall accept that the parties' reference to

Pennsylvania law is correct.[10]  See generally In re Columbia Gas Systems Inc., 997 F.2d

1039, 1062 n.13 (3d  Cir. 1993) ("All parties assume that if federal common law governs

the status of the customer refunds, the same body of law will determine whether the GRI

---

[9]In Pennsylvania, the entry of judgment creates a lien on real property in which the judgment defendant holds an interest if such property is in the county in which the judgment has been recorded.  See 42 Pa. C.S.A. § 4303(a); In re Upset Sale, Tax Claim Bureau of Berks County, 505 Pa. 327 (1984).  The entry of the judgment by itself does not create any lien on personal property.

[10]There is no suggestion that Delaware law would permit a setoff of an unmatured debt.  See generally Lynch v. County Bank, 1993 WL 390217 (Del. Super. 1993).  Furthermore, while the Deposit Agreement also provides a right of setoff,  ex. F, at 15,  this contractual right only arises when the debtor's guarantee obligation "becomes due."  Id.  Therefore, both potential alternative sources of Wachovia rights are similar to Pennsylvania common law on the key legal issue posed in these disputes.
      Delaware law is different from Pennsylvania law in one respect.  It precludes garnishments of bank accounts.  See 10 Del. Code § 3502(b); Bank of Delaware v. Wilmington Housing Authority, 352 A.2d 420 (Del. Super. 1976).

charges and upstream payments are held in trust.  We assume without deciding that this is true.").

Pennsylvania recognizes a common law right of setoff.  Royal Bank of Pennsylvania v. Selig, 434 Pa. Super. at 544-45 ("A creditor's right to attach a general bank account of its debtor is subject to the garnishee-bank's right to setoff any matured obligation owed to it by its depositor."); see Pioneer Commer. Funding Corp. v. Am. Fin. Mortg. Corp., 579 Pa. 275, 284 n.11 (2004); Aarons v. Public Service Building & Loan Ass'n, 318 Pa. at 118-19.  It is "generally established that a bank has a general lien upon, or right of setoff against, all moneys or funds in its possession belonging to a depositor to secure the payment of the depositor's indebtedness to it."  13 Standard Pennsylvania Practice § 77:29 (2d ed. 2004).  In order for setoff rights to arise, there must be (1) mutuality of obligation between the depositor and the bank, (2) the funds to be setoff must belong to the depositor, (3) the funds must be deposited in a general, as opposed to special purpose, account, and (4) the debt owed to the bank by the depositor must be matured.  Royal Bank of Pennsylvania v. Selig, 434 Pa. Super. at 545; see also Lynch v. County Bank, 1993 WL 390217 (Del. Super. 1993) (bank held right of setoff of deposit account when the depositor's loan went into default and so became due).

Once the depositor's obligation owed to the bank matures, the bank's setoff rights extinguish the depositor's interest in the bank account.  Royal Bank of Pennsylvania v. Selig, 434 Pa. Super. at 545; see Pittsburgh Nat'l Bank v. U.S., 657 F.2d 36, 38 (3d Cir. 1981) (under Pennsylvania law, "as soon as a debt owed to a bank by a depositor matures, the bank's right of setoff extinguishes the depositor's rights in the account.").  The extinguishment of the depositor's interest occurs by operation of law.

19

Royal Bank of Pennsylvania v. Selig, 434 Pa. Super. at 545.  Moreover, filing and serving

a writ of execution after setoff rights have arisen will not disturb or displace those setoff

rights.  Id.  "In effect, the garnishee-bank's common law right to setoff gives it a right to

self-help that takes priority over other creditors claiming a right to the funds on deposit."

Id.  Furthermore, a bank's right of setoff need not be exercised prior to service of a

judgment plaintiff's writ of execution in order to serve as a valid defense to any

garnishment proceeding.  See Adolph Bergman Building & Loan Ass'n v. Blaul, 318 Pa.

126 (1935);  Pittsburgh Nat'l Bank v. U.S., 657 F.2d at 38.

        Therefore, to the extent that Wachovia held valid setoff rights under

Pennsylvania law prior to service of Fletcher Harlee's writ of execution in January 2009,

Mr. Szymanski's interest in his deposit bank accounts would be subordinate to

Wachovia's interest; and, accordingly, Wachovia/garnishee's interest would be superior

to that of Fletcher Harlee/garnishor, as the latter was limited to the interest of its judgment

defendant.  See Duffy v. 58th & Chester Ave. Building & Loan Ass'n, 325 Pa. 127

(1937); Royal Bank of Pennsylvania v. Selig, 434 Pa. Super. at 551.  Conversely, if

Fletcher Harlee's garnishment lien pre-dated Wachovia's right of setoff, the latter would

be extinguished, as the amount due Fletcher Harlee on its judgment exceeded the amounts

in the debtor's garnished deposit accounts.  See Almi, Inc. v. Dick Corp., 31 Pa. Cmwlth.

26, 34-35 (1977); In re Petraglia, 156 B.R. 474, 476 (Bankr. W.D. Pa. 1993); 13 Standard

Pennsylvania Practice 2d, § 77:56 (2009) ("In order to have the right of setoff available

against the plaintiff, the garnishee must have acquired such right prior to service of the

execution.  A garnishee may not set off an obligation unmatured at the time of the

attachment of the matured obligation to the judgment debtor[.]")

20

III.


Before considering whether Wachovia held a right of setoff and, if so, the

time it arose, I note that the debtor, trustee and Fletcher Harlee all argue that any right of

setoff was waived by the bank's failure to assert it in its answers to the garnishment

interrogatories.  I find this contention problematic for a number of reasons.

First, although Pa. R. Civ. P. 3145(b)(2) permits a garnishee to raise

affirmative defenses against the garnishor that it had against the judgment-defendant,

such as setoff, this rule has been construed by a Pennsylvania appellate court as

permissive and not mandatory:

> ¶ 15 Appellant claims that the potential affirmative defenses
> that Garnishees attempt to invoke are waived because they
> were not raised in the pleadings pursuant to Pa. R.C.P. 3145.
> Accordingly, Appellant asserts that they do not preclude her
> garnishment action.
>
> ¶ 16 Rule 3145(b)(2) outlines the manner in which defenses
> to a garnishment action can be raised.  The rule provides, in
> pertinent part, as follows:
>
> (b) The garnishee in the answer under "new matter" **may**
> include
> > (1) the defenses of the immunity or exemption
> > of property;
> > (2) any defense or counterclaim which the
> > garnishee could assert against the defendant if
> > sued by the defendant but the garnishee may not
> > assert any defense on behalf of the defendant
> > against the plaintiff or otherwise attack the
> > validity of the attachment;
>
> Pa. R.C.P. 3145 (emphasis added).  The only pleadings in the
> case at bar are Appellant's interrogatories and Garnishees'
> answers thereto.

21

¶ 17 Pa. R.C.P. 1030, an equivalent provision that applies to actions in assumpsit, provides that an affirmative defense, including the statute of limitations, res judicata, or collateral estoppel shall be raised in new matter or it will be waived. See Coldren v. Peterman, 763 A.2d 905, 909 (Pa. Super. 2000) (Pursuant to Rule 1030, "[a]ffirmative defenses are compulsory and therefore must be timely pled [in new matter] or they are forever lost."). Mindful that garnishment procedures, as provided by Pa. R.C.P. 3154(a), "shall, as far as practicable, be the same as though the interrogatories were a complaint and the answer of the garnishee were an answer in assumpsit," Appellant asserts that the defenses are waived as a result of Garnishees' failure to raise them as new matter in the answer to her interrogatories.

¶ 18 Although Rule 3154 could be construed as requiring that defenses be raised as new matter, it likewise could be construed as merely permitting defenses to be raised at this stage in the proceedings. We note that while Rule 1030 is mandatory, the language in Rule 3145 is permissive. That is, "the answer under 'new matter' may include . . . any defense or counter claim which the garnishee could assert against the defendant. . . ." This Court consistently has interpreted the word "may" permissively when it is used in this manner. "While the word 'shall' might, in a proper setting, be interpreted as permissive, the word 'may' can never be given the imperative meaning." Commonwealth v. Baraniak, 350 Pa. Super. 459, 504 A.2d 931, 933 (1986) (quoting Weiner v. Hospital Service Plan of Lehigh Valley, 187 Pa. Super. 244, 144 A.2d 575, 577 (1958)). Compare Hotel Casey Co. v. Ross, 343 Pa. 573, 23 A.2d 737 (1942) (where statute directs doing a thing for the sake of justice, "may" means same as "shall"). Hence, in light of the uncertainty of the language employed in Rule 3145, we opt to find that Garnishees' defenses are not waived.

Sevast v. Kakouras, 841 A.2d 1062, 1068-69 (Pa. Super. 2003), rev'd on other grds., 591

Pa. 44 (2007). Thus, Pennsylvania law would apparently permit Wachovia to raise its

setoff defense against a garnishor even though it was not raised in its answers to

garnishment interrogatories. Furthermore, to the extent such a defense needs to be

included in those answers, a garnishee may be allowed to amend its responses to

interrogatories posed by the garnishor and add an affirmative defense when such

amendment would not prejudice the rights of the garnishor.  See Helms v. Chandler, 423

Pa. 77, 81-82 (1966).

      Here, the debtor's bankruptcy filing and automatic stay has preserved the

status quo.  All the funds remain on deposit.  It would be difficult for the plaintiffs or

Fletcher Harlee to demonstrate any prejudice by Wachovia's present assertion of setoff.

Indeed, while they have asserted prejudice in a conclusory fashion, they failed to offer

any evidence thereof.  See generally Brown v. City of Pittsburgh, 409 Pa. 357, 360-61

(1962) (party claiming waiver has the burden to demonstrate prejudice).

      Similarly, in the bankruptcy context, in certain circumstances a creditor may

waive its prepetition right to setoff.  See generally In re Continental Airlines, 134 F.3d

536, 542 (3d Cir.) (post-confirmation assertion of right to setoff was prejudicial and

therefore disallowed as waived); cert. denied sub nom. United States v. Continental

Airlines, 525 U.S. 929 (1998).  Absent prejudice, including detrimental reliance, a

bankruptcy waiver of setoff rights can be rescinded.  See In re Metropolitan International,

Inc., 616 F.2d 83 (3d Cir. 1980).

      Since Wachovia did not waive its prepetition setoff rights under

Pennsylvania law by its response to the garnishment interrogatories, and, even if it had,

such waiver can be rescinded as the objecting parties here have demonstrated no

prejudice by the bank's present assertion of such rights, I conclude that any valid setoff

rights held by Wachovia may be raised under section 553 in opposition to the plaintiffs'

turnover demand and in support of its lift-stay motion.

IV.

Accordingly, I must now analyze whether Wachovia held any valid setoff rights under Pennsylvania law concerning the debtor's deposit accounts.

As mentioned above, Wachovia holds an automatic common law right of setoff as to bank accounts when there is a (1) mutuality of obligation between the depositor and the bank, (2) the funds to be setoff belong to the depositor, (3) the funds are deposited in a general, as opposed to special purpose, account, and (4) the debt owed to the bank by the depositor is matured.  Here, only the fourth requirement is at issue.

Wachovia contends, and the debtor and the chapter 13 trustee dispute, that the S&C Properties and Del Concrete obligations had matured prior to Fletcher Harlee's service of its garnishment writ on January 14, 2009.  Fletcher Harlee concedes that the Del Concrete obligation matured before January 2009, as that obligation was represented by a demand note, but denies that the S&C Properties note had matured.

Under Delaware law, "the execution of a demand note constitutes an agreement between the borrower and the lender that the note may be called for payment at any time, and without cause."  Daystar Const. Management, Inc. v. Mitchell, 2006 WL 2053649, at *9 n.64 (Del. Super. 2006) (quoting First Fed. Sav. Bank v. CPM Energy Sys., 1993 WL 138986, at *2 (Del. Super. 1993)).  Similarly in Pennsylvania, a demand note is immediately mature and affords a bank an immediate right of setoff, upon which right it may or may not elect to execute:

> With the "demand obligation" exceeding the value of the CD held by CCNB, the Adlers' obligation had matured. . . .  The fact that CCNB chose not to exercise the right of set-off at the time the Adlers' debt exceeded the CD does not prejudice the

24

bank's right of set-off.  "The bank's right of set-off amounted
to no more than an open-ended credit arrangement."
Pittsburgh National Bank v. United States, 498 F. Supp. 101,
104 (W.D. Pa. 1980), aff'd, 657 F.2d 36 (3rd Cir. 1981).
Therefore, the money on deposit with CCNB was under its
sole control, which permitted it, at anytime, without notice to
terminate this credit arrangement.  And, because the Adlers'
obligation to CCNB was evidenced by a "demand" note,
CCNB's lien (by operation of law) automatically extinguished
the Adlers' right to the CD.

At no time since the indebtedness matured could the Adlers
have compelled CCNB under state law to deliver any of the
CD money to them.  Id.  Thus, the Adlers had no property
right in the account, and there was nothing to which their
creditor/Pennsylvania National Bank & Trust Co. could claim
an interest.

Pennsylvania Nat. Bank & Trust Co. v. CCNB Bank, N.A., 446 Pa. Super. 625, 631-32

(1995) (citations omitted), appeal discontinued.[11]

 The debtor and chapter 13 trustee argue unpersuasively, without citation to

authority, that the Del Concrete note would only mature when demand is made for

payment.  As both Delaware and Pennsylvania law are to the contrary, Wachovia held a

right of setoff regarding the Del Concrete note that pre-dated Fletcher Harlee's

garnishment lien.  See 13 Standard Pennsylvania Practice 2d § 77:56 (2009) ("A

garnishee may not set off an obligation unmatured at the time of the attachment of the

---

[11]See Pioneer Commercial Funding Corp. v. American Financial Mortg. Corp.,
579 Pa. at 286 n.14.

matured obligation to the judgment debtor, but he or she may set off an obligation payable

on demand, even though no demand was made before the service of the writ.").[12]

All three parties challenge Wachovia's contention that its S&C Properties

loan also matured before Fletcher Harlee garnished the debtor's deposit accounts.  This

obligation was a term loan.  It is stipulated that S&C Properties made all payments due

under the promissory note until February 5, 2009, which date is after the January 14, 2009

garnishment.  Nonetheless, Wachovia argues that the loan was in default in December

2008.

Wachovia reasons that entry of Fletcher Harlee's judgment against Mr.

Szymanski on December 24, 2008 constituted a default of the debtor's Del Concrete

guarantee, based upon a definition of default in that document that included "a material

adverse change."[13]  There is, however, no similar provision in the S&C Properties loan

guarantee.  Moreover, Wachovia does not argue that Del Concrete is an affiliate of S&C

Properties, Ltd. within the meaning of 11 U.S.C. § 101(2) (cited in note 2 above).  Thus, a

loan default under the Del Concrete note does not, by its terms, constitute a default by

S&C Properties.

---

[12]No one suggests that such setoff right is limited by the improvement of position
limitation found in 11 U.S.C. § 553(b).  The debtor filed his bankruptcy petition on February 9,
2009.  November 11, 2008 was the 90th day prior to this filing.  On November 10, 2008, there
were more than $218,000 on deposit and on January 14, 2009, about $35,000 was owed on the
Del Concrete loan.  Thus, there appears to be no insufficiency within the 90-day reachback
period.

[13]In its lift-stay motion, Wachovia alleged that the S&C Properties note was in
default owing to "nonpayment of sums when due thereunder and the instant bankruptcy filing."
Motion, ¶ 5.  All parties agreed that S&C Properties tendered all required loan payments until
February 5, 2009; moreover, the debtor's bankruptcy filing was on February 9th.  Both of those
events of default postdate Fletcher Harlee's garnishment lien.  Thus, Wachovia now maintains
that the loan default occurred in December 2008 when judgment was entered against the debtor.

26

Nevertheless, the S&C Properties loan guarantee signed by Mr. Szymanski in March 2002 includes within its definition of default: "a breach of any agreement or representation contained or referred to in the Guaranty, or any of the Loan Documents, or contained in any other contract or agreement of Guarantor with Bank or its affiliates, whether now existing or hereafter arising[.]"  Ex. C, at 3.  Based upon this provision, Wachovia contends that the alleged default of the Del Concrete guarantee, by virtue of the entry of the Fletcher Harlee judgment against the guarantor, constituted a default of the S&C Properties guarantee, which in turn constituted a default of the S&C Properties loan note, which in turn rendered that obligation immediately due and payable even though S&C Properties was current in its payments, and thereby providing Wachovia with a right of setoff of a matured obligation.

In other words, Wachovia maintains that the S&C Properties loan went into default upon the entry of judgment against the debtor, although neither the S&C Properties promissory note nor the loan guarantee expressly so provide.  The first link in Wachovia's chain is the Del Concrete guarantee document.  The provision emphasized by Wachovia, quoted earlier, states that a default of that guarantee occurs, inter alia, when:

> (d) Bank determines in good faith, in its sole discretion, that the prospects for payment or performance of the Guaranteed Obligations are impaired or a material adverse change has occurred in the business or prospects of Borrower or Guarantor, financial or otherwise.

Ex. D, at 3.

I observe that Wachovia does not argue that the first clause of this provision is relevant.  That is, it does not contend that it had a good faith belief, based upon the

entry of the Fletcher Harlee judgment against Mr. Szymanski, that "the prospects for payment or performance of the Guaranteed Obligations" were impaired.

"Guaranteed Obligations" is defined as all obligations owed by Del Concrete to Wachovia or Wachovia's affiliates, assignees or successors. Ex. D, at 1. The definition does not include the S&C Properties obligation. Moreover, at the time of the entry of judgment in December 2008, Del Concrete apparently was current in its loan payments, there was a principal balance on the loan of less than $40,000, and Wachovia held a first mortgage lien on commercial realty that, at some point after February 2007, had a value estimated by a real estate broker to be $1.2 million. Ex. E.

Instead of contending that there was a good-faith basis for concluding that the prospects for repayment of the Del Concrete loan were impaired by the Fletcher Harlee judgment, Wachovia focuses upon the second clause of this guarantee default provision. The bank maintains that entry of the Fletcher Harlee judgment of more than $330,000 against Mr. Szymanski constituted "a material adverse change . . . in the business or prospects of . . . [the] Guarantor, financial or otherwise." In support of this position, Wachovia cites to Commerce Bank, N.A. v. Porterra, LLC., 2007 Phila. Ct. Com. Pl. Lexis 313 (C.P., Phila. 2007).

The Porterra decision held that the filing of a lawsuit against a borrower, with an "accompanying lis pendens and, most importantly, the court's appointment of a Receiver," id., at *11, constituted a loan default under the following loan default provision:

> The occurrence and continued existence of a material adverse change, in the reasonable determination of [the lender], in the financial condition of [the borrower]. . . .

28

Id., at 8.  Wachovia's similar contention, that the debtor "experienced a material adverse change in his financial condition" by virtue of the Fletcher Harlee judgment against him,[14] overlooks the precise language of the Del Concrete loan guarantee.

The debtor represented and warranted to Wachovia that, between the time he provided his financial statements to the bank and the date of the loan guarantee, there had been no material adverse change in his financial condition.  Ex. D, at 3 ("Financial Condition").  If that representation had been false, then a default in the guarantee may have occurred.  Id., at 3 (Default (b)).  Wachovia, however, does not so contend.

The Del Concrete guarantee document did not provide that a material adverse change in the "financial condition" of Mr. Szymanski that occurred long after the loan guarantee was signed constituted a default.  Instead, the document specified only that if a "material adverse change" in his  "business or prospects" occurred in the future would there be a default in the guarantee.  Ex. D, at 3 (Default (d)).

This unconditional guarantee agreement was a document prepared by Wachovia in 2004 from a template.  It is a revised version of the 2002 S&G Properties loan guarantee.  That earlier document contains a footer stating that it was derived from version "rev w8.0," while the latter had a footer identifying it as "rev 14.0."  Both footers contain the same document reference number: 535104.  Many of the guarantee provisions are identical.  The bank logo on the 2002 document dispels any possibility that these guarantee agreements were forms prepared by Mr. Szymanski or the corporate borrowers, rather than the lender.

---

[14]"Wachovia Bank N.A.'s Brief in Response to Plaintiffs' Brief in Support of Count I of the Complaint," at 4 (unpaginated).

Under relevant state law, ambiguities in interpretation of a contract are construed against its drafter.  See, e.g., Kaiser Aluminum Corp. v. Matheson, 681 A.2d 392, 398 (Del. 1996).  A contract provision is treated as ambiguous when it is "susceptible to two or more reasonable interpretations[.]"  Medek v. Medek, 2009 WL 2005365, at *8  (Del. Ch. 2009).

The terms "business" and  "prospects" are undefined in the guarantee document.  In the context of the second clause of the default provision quoted above, "business" could reasonably mean the guarantor's "occupation, profession or trade." Random House Dictionary of the English Language, at 201 (1973, Unabridged).  No evidence was offered concerning the debtor's business, if any, in December 2008 when the judgment against him was entered.

Were I to take judicial notice of his bankruptcy schedules, I would find that on Schedule I the debtor states that in February 2009 he was a "bricklayer, mason."  Entry of a judgment against him would not preclude the debtor from continuing as a bricklayer or mason, nor adversely affect such a profession, trade or occupation.

Wachovia implicitly argues that the term "prospects" was intended to refer to the debtor's "financial prospects,"[15] and that such prospects would be materially affected by the entry of a judgment against him.  Prospects, however, could also reasonably refer to the debtor's future business activities.  See Random House Dictionary of the English Language, at 1154 (1973, Unabridged) (defining a prospect as "an apparent probability of advancement, success, profits, etc.").  Indeed since the first clause of this

---

[15]Wachovia Bank N.A.'s Brief in Response to Plaintiffs' Brief in Support of Count I of the Complaint," at 3 (unpaginated).

default provision already addresses "prospects for payment or performance of the Guaranteed Obligations," and the warranty portion of the agreement addresses material adverse changes in his financial condition as of March 2004, construing the second clause of this default provision as intended to refer to business prospects becomes even more plausible. And, once again, there is no basis in the evidence to conclude that the debtor's business prospects were adversely affected by the Fletcher Harlee judgment against him.

In other words, I disagree with Wachovia that use of the phrase "business or prospects . . . financial or otherwise" must be interpreted synonymously with the phrase "financial condition." The phrase Wachovia included in the default portion of the guarantee document is ambiguous, and that ambiguity is construed against its drafter.

Accordingly, I conclude that Wachovia's syllogism—wherein a default of one loan guarantee yields a default of an earlier guarantee that results in a default of an earlier loan—is unpersuasive. The bank has not proven that the debtor defaulted on his Del Concrete guarantee in December 2008.

Because Wachovia has not demonstrated that the S&G Properties loan was matured at that time, the bank held no right of setoff prior to the Fletcher Harlee loan garnishment lien. As a result, the garnishor's lien now precludes any bank setoff of the S&C Properties loan obligation.[16]

---

[16]This conclusion renders it unnecessary to consider the other arguments raised against Wachovia's setoff of the S&G loan balance.

V.

For the reasons set forth above, I conclude that Wachovia holds a setoff claim under section 553 against the debtor for its outstanding Del Concrete loan guarantee, but not for its S&G Properties loan guarantee.  The parties have stipulated that Wachovia was owed $35,148.88 on the Del Concrete note as of January 14, 2009. Wachovia filed a proof of claim, docketed on the claims register as claim #9, asserting that it was owed only $25,257.10 on the Del Concrete loan as of the date of the debtor's bankruptcy filing, February 9, 2009.

Whatever the amount due as of February 9th, with the setoff claim treated as though it were a secured claim under section 506(a) of the Bankruptcy Code, and with the collateral being the deposit accounts, Wachovia is an oversecured creditor entitled to postpetition interest under section 506(b).  See In re Rozel Industries, Inc., 120 B.R. 944, 948 (Bankr. N.D. Ill. 1990).  The promissory note provided that interest was payable at the "Bank's Prime Rate" with a default rate at 3% above the interest rate.  Ex. C, at 1.  As there was no evidence offered regarding Wachovia's prime rate, cannot now compute the amount owing to Wachovia on the Del Concrete loan.

Insofar as the plaintiffs' turnover claim against Wachovia is concerned, that claim is defeated by the latter's setoff claim.  See 11 U.S.C. § 542(b).  Furthermore, other than the stipulation that the debtor hopes to reorganize in chapter 13 using his Wachovia deposit account proceeds, there is no evidence that the debtor intends to address this setoff claim in this chapter 13 case.  His schedules list Wachovia as an unsecured creditor, and his proposed chapter 13 plan, which plan was recently denied confirmation,

32

did not provide for the bank's secured claim.  Furthermore, no evidence was offered that Del Concrete is now paying or will repay its obligation to Wachovia.

In deciding whether to terminate, modify, condition, or annul the bankruptcy stay under section 362(d)(1), as Wachovia requests, I note that the issue is committed to bankruptcy court discretion, see In re Sonnax Industries, Inc., 907 F.2d 1280, 1286 (2d Cir. 1990); In re Wilson, 116 F.3d 87, 89 (3d Cir. 1997) ("We review a decision to deny the automatic stay for abuse of discretion."); Matter of Holtkamp, 669 F.2d 505 (7th Cir. 1982); In re Shariyf, 68 B.R. 604 (E.D. Pa. 1986), and is to be determined by examining the totality of the circumstances.  See In re Wilson, 116 F.3d at 90; Matter of Baptist Medical Center of New York, Inc., 52 B.R. 417, 425 (E.D.N.Y. 1985), aff'd, 781 F.2d 973 (2d Cir. 1986).  Section 362(d)(1) permits termination of the bankruptcy stay "for cause, including the lack of adequate protection of an interest in property of such party in interest."

As observed earlier, courts grant relief from the bankruptcy stay to permit a creditor to exercise setoff rights, unless an objector demonstrates that setoff is unwarranted.  The objectors herein have not done so.

In this contested matter, I conclude that permitting setoff of the Del Concrete demand note obligation is appropriate, given that such setoff constitutes a small fraction of the funds on deposit and there is no evidence that Wachovia's setoff claim will otherwise be provided for in this chapter 13 case.  See generally In re Bilinski, 1998 WL 721083, at *3 (E.D. Pa. 1998) ("As a secured creditor whose claim was not provided for by Ms. Bilinski's plan, Mr. Block was entitled to relief from the automatic stay."); 8 Collier on Bankruptcy, ¶ 1325.06[1][b], at 1325-29 (15th ed. rev. 2006) ("The holders of

33

allowed secured claims not provided for by the plan may seek appropriate relief from the automatic stay in furtherance of any contractual or other remedies available against the chapter 13 debtor or their collateral."). Moreover, the objectors presented no evidence that Del Concrete will repay its obligation. Nor was sufficient information provided about the S&C Properties realty—present fair market value, the existence of tax liens—that would justify denial of setoff and thus limiting Wachovia to its remedies as a secured creditor of that non-debtor.

Accordingly, appropriate orders shall be entered in this adversary proceeding and in the contested matter.

_____
BRUCE FOX
United States Bankruptcy Judge

Dated: August 12, 2009